[Crim. No. 12009.   In Bank.   Jan. 31, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH VASQUEZ CASTILLO, Defendant and Appellant.

Joseph V. Mazziotta, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Stanton Price and Philip C. Griffin, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—An information charged defendant with the murder of Guadalupe R. Rios. Defendant entered pleas of not guilty and not guilty by reason of insanity and admitted a charged prior conviction for assault with a deadly weapon. A jury found him guilty of murder in the first degree. Defendant withdrew his plea of not guilty by reason of insanity and waived a jury trial on the issue of penalty. The trial court fixed the punishment at life imprisonment and entered judgment accordingly. This appeal followed.

Defendant contends that the trial court erroneously instructed the jury on the issue of voluntary manslaughter in that it failed to inform the jury that defendant could be convicted of manslaughter if he had intentionally committed the killing, yet, because of diminished capacity, did not act with malice. (*People* v. *Conley* (1966) 64 Cal.2d 310, 318 [49 Cal.Rptr. 815, 411 P.2d 911].) We conclude that defendant presented sufficient evidence of diminished capacity due to ''pathological intoxication'' to warrant the giving of the instruction set forth in *Conley* (64 Cal.2d at pp. 324-325 fn. 4) and that the failure of the trial court so to instruct requires reversal. (*People* v. *Wilson* (1967) 66 Cal.2d 749, 759, 762-763 [59 Cal.Rptr. 156, 427 P.2d 820] ; *People* v. *Modesto* (1963) 59 Cal.2d 722, 731 [31 Cal.Rptr. 225, 382 P.2d 33].) We need not consider defendant's other assertions of error, as those matters may not arise upon a retrial.

According to the prosecution's evidence at trial, defendant entered a bar in Fontana on August 6, 1966, along with his brother and another companion. They consumed half a pitcher of beer, and defendant also drank about half a bottle of beer. Defendant then went over to the pool table where Rios was standing and said, ''What are you looking at me for?'' Rios

denied staring at him, and defendant's companions brought him back to the bar. A few minutes later, however, he returned to the pool table and asked Rios the same question. This time Rios told defendant to keep away or he would hit defendant with a cue stick. Later defendant and his companion went outside to their car; Rios followed them, told defendant he "had been nasty," and hit him on the mouth.

Defendant then drove off but returned to the bar approximately an hour and a half later. He entered holding a gun. Rios picked up a bar stool and held it in front of him. Defendant, standing about 14 feet from Rios, said "I kill you" and fired once at Rios, who sustained a mortal wound. Defendant ejected the shell from the weapon and ran from the bar.

Defendant then drove to the home of his sister and brother-in-law and parked his car in their garage. He asked his brother-in-law to drive him home, stating that he had been in a fight and was too drunk to drive.

A deputy sheriff went to defendant's home that evening. Defendant, whose hair had been long at the time of the homicide, was being given a haircut. The deputy asked defendant for his name and address; defendant stated that he was *Lupe* Castillo and gave a false address. The deputy arrested him.

During interrogation by officers early the next morning defendant stated that he had received his facial injuries in a fall at his home. He denied going to the bar and stated that he did not own a shotgun. He also said he did not know the location of his car.[1] In the ground surrounding defendant's brother-in-law's garage the officers discovered two recently buried shotgun shells, which had been fired from the same weapon as the shell recovered in the bar.

Defendant introduced expert testimony of two witnesses which tended to show that because of diminished capacity he was unable to premeditate and deliberate or to commit the homicide with malice. Dr. Lawrence, a psychologist, testified that he had examined defendant on two occasions for about an hour and a half each time. He administered several tests to defendant including the Wechsler Adult Intelligence Scale, the Rorschach Diagnostic Test, the Diagnostic Drawing Tests, and the Thematic Apperception Test. He concluded from the

[1]Defendant did not contend at trial, and does not now contend, that the admission into evidence of his statements violated the principles set forth in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

results of the tests and from his observation of defendant that defendant was mentally retarded,[2] and that he was easily influenced. In a test designed to measure defendant's ability to form a plan and to execute that plan he obtained a low score.

Dr. Minard, a psychiatrist, testified that he had examined defendant for an hour and had reviewed the defense attorney's files in the case. He concluded that defendant had an unusual reaction to alcohol, a condition he described as alcoholic pathological intoxication. A person suffering from this condition may react exceptionally following the consumption of a small amount of alcohol and perform acts of violence without apparent motivation. The subject will almost always undergo a complete amnesia. The condition is quite similar to psychomotor epilepsy, which is caused by an electrical disturbance in the temporal lobe of the brain. Dr. Minard stated that on the basis of the facts of the homicide and his examination of defendant he believed that defendant had been unable to deliberate, premeditate, and reflect upon the gravity of the act meaningfully, and to harbor malice aforethought. Although stating that defendant's actions on the day of the homicide gave the impression that defendant was acting as a deliberating and reflecting man, Dr. Minard stated that his observation of defendant and study of his history indicated that defendant was suffering from a psychomotor seizure during the commission of the homicide and that no person so afflicted could premeditate or deliberate.[3]

Defendant primarily contends that the trial court committed error in instructing the jury. The trial court fully and correctly instructed the jury on first degree premeditated and deliberate murder and on second degree murder. The court explained that malice aforethought was an essential element of murder (Pen. Code, § 187) and that the jury should consider the evidence of diminished capacity in determining whether defendant acted with malice: "If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, intoxication or any other cause, you must consider what effect, if any, this diminished capacity

---

[2]Defendant scored 67 on an intelligence test on which a score of 100 is average. Ninety-nine percent of the people falling within defendant's age group would have a better score.

[3]"I choose to believe that his history of blackouts in the past, his claim of amnesia at the present is amnesia at the present, his poorly motivated act of violence, his having not drinking [sic] all tie together to constitute all of the eventual things necessary to diagnose this condition."

had on the defendant's ability to form any of the specific mental states that are essential elements of murder. Thus, . . . if you find that the defendant's mental capacity was so diminished that he did not, or you have a reasonable doubt whether he did, harbor malice aforethought, as it has been defined for you, you cannot find him guilty of murder of either the first or second degree.'' The trial court also instructed the jury on voluntary manslaughter upon a sudden quarrel or heat of passion and involuntary manslaughter. (Pen. Code, § 192.)

The error asserted by the defendant lies not in the language of the instructions but in their inadequacy. Although the trial court correctly instructed the jury that it must not convict defendant of *murder* without proof of malice, the court did not instruct the jury that it could convict defendant of *voluntary manslaughter* if it found that defendant had intentionally taken life but in so doing lacked malice because of diminished capacity due to mental defect, mental illness, or intoxication. Thus the trial court failed to give the instruction set out in *People* v. *Conley, supra,* 64 Cal.2d 310, 324-325 fn. 4.[4]

The nature of this error was fully and correctly explained by the Court of Appeal in *People* v. *Aubrey* (1967) 253 Cal. App.2d 912, 918-919 [61 Cal.Rptr. 772], a case raising this precise problem. ''In *Conley,* a conviction of first degree murder was reversed because of the failure of the trial court to instruct on manslaughter. The defendant had testified that he did not intend to kill and he could not remember what he had done. A blood test showed alcohol sufficient for intoxication. The opinion points out that evidence of intoxication may be considered by the jury to rebut malice. Referring to an earlier case, the court said (at p. 318) : 'We thus gave effect to the statutory requirements for the offense of manslaughter, ''the unlawful killing of a human being without malice,'' and recognized that since the statute had been enacted before the concept of diminished capacity had been developed, its enumeration of nonmalicious criminal homicides did not include

---

[4]In *Conley* we suggested that the jury be instructed on voluntary manslaughter in the following language: ''Voluntary manslaughter [is] an intentional killing in which the law, recognizing human frailty, permits the defendant to establish the lack of malice either by a. Showing provocation such as to rouse the reasonable man to heat of passion or sudden quarrel. . . . b. Showing that due to diminished capacity caused by mental illness, mental defect, or intoxication, the defendant did not attain the mental state constituting malice.''

those in which the lack of malice results from diminished capacity. That enumeration could not be exclusive, for in the absence of malice a homicide cannot be an offense higher than manslaughter. [Citations.] Accordingly, a finding of provocation sufficient to reduce murder to manslaughter is not the sole means by which malice can be negated and voluntary manslaughter established. A person who intentionally kills may be incapable of harboring malice aforethought because of a mental disease, defect, or intoxication, and in such case his killing, unless justified or excused, is voluntary manslaughter.'

" . . . . . . . . . .

■ "What the *Conley* opinion teaches is that there is a type of voluntary manslaughter which does not come within any of the three definitions found in Penal Code section 192. . . . The nonstatutory voluntary manslaughter is a homicide which may be intentional, voluntary, deliberate, premeditated, and unprovoked. It differs from murder in that the element of malice has been rebutted by a showing that the defendant's mental capacity was reduced by mental illness, mental defect or intoxication. ■ To explain manslaughter in terms of its statutory elements, as set forth in section 192, does not reveal to the jury the existence of the nonstatutory form of the offense. The statutory definition carries the implication that only a homicide provoked by passion or a sudden quarrel can be classified as voluntary manslaughter.'' (Fn. omitted.) (See also *People* v. *Waters* (1968) 266 Cal.App.2d 116, 120-122 [71 Cal.Rptr. 863] ; *People* v. *Coyne* (1968) 263 Cal.App.2d 445, 449-450 [69 Cal.Rptr. 736] ; *People* v. *Moore* (1968) 257 Cal.App.2d 740, 747-748 [65 Cal.Rptr. 450].)

■ The evidence of defendant's lack of malice because of diminished capacity due to pathological intoxication was "deserving of consideration." (*People* v. *Modesto, supra,* 59 Cal.2d 722, 727.) Indeed, the trial court instructed the jury on the significance of the diminished capacity defense in other respects. The court must have concluded that sufficient evidence had been adduced to compel an instruction on diminished capacity because it gave such an instruction, although it was an inadequate one. Accordingly, in failing to instruct on nonstatutory voluntary manslaughter the court erred.

■ "It is *elementary* that the court should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatsoever.*'' (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281] ; *People* v. *Modesto, supra,* 59 Cal.2d 722, 727.)

■ Under our decisions, we do not attempt to assess the prejudicial effect of this error. "It is . . . settled that defendant's right to a manslaughter instruction when there is evidence thereof precludes not only our weighing that evidence to determine the likelihood that a properly instructed jury would have found manslaughter, but also our attempting to determine how the failure to present the issue of manslaughter to the jury may or may not have influenced its choice between first and second degree murder. Since we do not know what effect an instruction that the jury could return a verdict of manslaughter would have had on its deliberations, we cannot conclude that it necessarily rejected the evidence of manslaughter. Defendant was entitled to a jury trial on all of the issues presented by the evidence, and that right he was denied." (*People* v. *Modesto, supra,* 59 Cal.2d 722, 731.) The same considerations apply when the jury is not instructed that it can return a verdict of voluntary manslaughter due to diminished capacity.[5] (See *People* v. *Aubrey, supra,* 253 Cal. App.2d 912, 919-920; *People* v. *Waters, supra,* 266 Cal.App. 2d 116, 120-122.) To the extent that *People* v. *Stephanson* (1968) 259 Cal.App.2d 181, 188-190 [66 Cal.Rptr. 155], is inconsistent with the foregoing rulings it is overruled.

The judgment of conviction is reversed.

Traynor, C. J., Peters, J., and Sullivan, J., concurred.

MOSK, J.—I concur in the judgment under compulsion of *People* v. *Conley* (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911], and *People* v. *Modesto* (1963) 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33]. However, I would not disapprove *People* v. *Stephanson* (1968) 259 Cal.App.2d 181 [66 Cal. Rptr. 155], a case in which this court properly denied a hearing as recently as April 17, 1968.

Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Kerrigan in the opinion prepared by him for the Court of Appeal in *People* v. *Castillo* (Cal.App.) 65 Cal.Rptr. 202.

---

[5]Defendant's failure to request the particular *Conley* manslaughter instruction "does not preclude defendant from raising this point on this appeal. It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence." (*People* v. *Wilson, supra,* 66 Cal.2d 749, 759; *People* v. *Henderson* (1963) 60 Cal.2d 482, 489-490 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Aubrey, supra,* 253 Cal.App.2d 912, 920.)