[Crim. No. 4024. Fourth Dist., Div. Two. Oct. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD TED CRAM, Defendant and Appellant.

## COUNSEL

Rufus W. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey C. Freedman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—Defendant was convicted of robbery, sentenced to the penitentiary and appeals.

On the evening of April 27, 1969, the victim, Mr. MacClellan, was leaving a bar when he met the defendant and a Mr. Burchfield. After some conversation, MacClellan invited the defendant and Burchfield to his home where both defendant and Mr. Burchfield identified themselves by the false name of "Bob" to Mr. MacClellan's roommates. A discussion occurred concerning having a party and getting some girls; defendant and Burchfield stated that they could acquire some girls. Thereupon MacClellan, Burchfield and the defendant went in Burchfield's car to an area where the defendant told Burchfield to stop. Mr. Burchfield exited the car, and Mr. MacClellan got out following Mr. Burchfield whereupon the defendant struck Mr. MacClellan on the head with a tire iron, knocking him unconscious. Defendant then went through MacClellan's pants, took his wallet, some money, and threw the wallet away. Defendant and Mr. Burchfield then spent the balance of the evening drinking up the proceeds from the robbery.

The defendant had previously talked to Burchfield about "rolling someone" for money in a manner similar to the way "he used to do it in Chula Vista." Burchfield, who testified for the prosecution, had a "vague idea" that Mr. MacClellan was going to be robbed. MacClellan regained consciousness and eventually was taken to the hospital where he received 13 or 14 stitches in his ear.

Sometime later the defendant said to a Mr. Springfield that he and Burchfield had committed a robbery when Burchfield had hit the victim over the head with a baseball bat but that he, the defendant, had made a mistake in leaving a tire iron there and that he did not know whether the victim was dead or alive. Springfield further testified that the defendant

was not working and had no money to pay for the rent at the time of the incident.

The defendant testified on his own behalf to the effect that Burchfield committed the robbery. He admitted that he received half of the proceeds of the robbery. He had been convicted of felonies—sales of restricted dangerous drugs.

The defendant contends:

## I.

THAT THE TRIAL COURT SHOULD HAVE INSTRUCTED THE JURY ON ITS OWN MOTION ON THE EFFECT OF INTOXICATION IN DIMINISHING CAPACITY TO FORMULATE THE SPECIFIC INTENT TO STEAL WHICH IS A REQUIREMENT OF THE CRIME OF ROBBERY.

■ The general rules on *sua sponte* instructions may be briefly summarized as follows:

In the absence of a request, the trial court must instruct on the general principles of law relative to the issues raised by the evidence but need not instruct on its own motion on specific points developed at the trial. The general principles of law covering the case are those commonly or closely and openly connected with the facts of the case. The trial court is not required to anticipate every possible theory that may fit the facts or fill in every time a litigant or his counsel failed to discover some obscure, but possible, theory of the facts. There must be *substantial* evidence on the issue sufficient to alert the trial judge that it is an issue in the case. There is no duty on the trial court to dissect the evidence in an effort to develop some arcane, remote or nebulous theory of the evidence on which to instruct. The duty of the trial court involves percipience—not omniscience. (*People* v. *St. Martin,* 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P. 2d 370]; *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Gonzales,* 4 Cal.App.3d 593, 608 [84 Cal.Rptr. 863]; *People* v. *Rodriguez,* 274 Cal.App.2d 487, 494-495 [79 Cal.Rptr. 187]; *People* v. *Crawford,* 259 Cal.App.2d 874, 877 [66 Cal.Rptr. 527].)

■ On the other hand, if the defendant *requests* an instruction, it must be given on an issue if there is *any* evidence on that issue deserving of any consideration whatever—no matter how incredible that evidence may be. (*People* v. *Modesto,* 59 Cal.2d 722, 727 [31 Cal.Rptr. 225, 382 P.2d

42

33], disapproved on another ground in *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]; *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281].)

█ Turning to the specific problem of *sua sponte* instructions on diminished capacity to formulate a specific intent, the same general rules apply—to make mandatory the giving of such instructions there must be substantial evidence of diminished capacity sufficient to alert the trial judge that it is an issue in the case. While the nature of the defense presented does not relieve the trial judge of his responsibility to give a *sua sponte* instruction in a proper case (the rule exists to protect the defendant from ineptness or inadvertence of counsel), it is a factor to be considered. Thus, if the defense is nonparticipation or alibi, there is less to alert the judge to the need for such an instruction than if the defense were admittedly diminished capacity. ("In application of these rules, this court has recognized that the trial court on its own motion must instruct on the issue of diminished capacity in a murder case where there is *substantial evidence that the defendant is relying upon such a defense."* (Italics added.) (*People* v. *St. Martin, supra,* 1 Cal.3d 524, 531.) "His defense, we repeat, was that of alibi, not diminished capacity." (*People* v. *Fain,* 70 Cal.2d 588, 597 [75 Cal.Rptr. 633, 451 P.2d 65].) "But appellant's defense at trial was not diminished capacity; it was an alibi." (*People* v. *Nichols* *(Cal.App.) 84 Cal.Rptr. 405.) "The defense made no such claim. Alibi, not intoxication, was its trial theory." (*People* v. *Crawford, supra,* 259 Cal.App.2d 874, 878.))

█ In the instant case the thrust of the defendant's presentation was not intended to establish diminished capacity to formulate the specific intent to steal by reason of intoxication; it was nonparticipation.

Thus, we must examine the record to ascertain if there was evidence of intoxication of such a substantial nature as to alert the trial judge to the existence of the issue of the defense of diminished capacity even though the trial defense was nonparticipation.

Both the defendant and Burchfield had been drinking. They apparently continued to drink during the entire incident and spent their loot in getting intoxicated after the incident. At the time of the incident, Burchfield believed the defendant to be "a little high." On one occasion, the defendant testified that he was "pretty drunk." Is this enough to call for a *sua sponte*

*A hearing was granted by the Supreme Court on April 15. 1970. The final opinion of that court is reported in 3 Cal.3d 150 [89 Cal.Rptr. 721, 474 P.2d 673].

instruction that his mental condition may not have been such that he may not have had the specific intent to steal? We believe not.

Here, the evidence of intoxication was thin, to put it mildly. As contrasted to his statement that he was "pretty drunk" and Burchfield's opinion that he was a "little high," we have the following facts: the defendant needed money; he planned on robbing someone; he gave a false name; he told the victim he knew where he could find some girls; and he gave directions to the driver as to where they should drive—thus, removing the victim to an area where he could be robbed efficiently and with some security. "These are not the actions of a man too drunk to form a specific intent to rob. [Citations.]" (*People* v. *Spencer,* 60 Cal.2d 64, 89 [31 Cal. Rptr. 782, 383 P.2d 134].)

While an exhaustive review of the cases involving the quantum of proof of intoxication necessary to call for a *sua sponte* instruction on the subject would only unduly prolong this already overlong opinion, a representative few might be noted:

In *People* v. *Castillo,* 70 Cal.2d 264 [74 Cal.Rptr. 385, 449 P.2d 449], two qualified experts testified that the defendant had diminished capacity due to pathological intoxication.

In *People* v. *Baker,* 42 Cal.2d 550 [268 P.2d 705], there was ample evidence of extreme intoxication coupled with drug use.

In *People* v. *Sanchez,* 35 Cal.2d 522 [219 P.2d 9], the defendant testified that he was so intoxicated that he had little recollection of the event.

In *People* v. *Rodriguez, supra,* 274 Cal.App.2d 487, a criminologist testified that the defendant had a blood alcohol content of .20; that to reach that level a man his size would have had to consume 20 to 25 ounces of .86 proof alcohol; that a man that drunk would be unable to make decisions or react as quickly as in a normal situation and possibly would be disoriented as to time and place.

In *People* v. *Stewart,* 267 Cal.App.2d 366 [73 Cal.Rptr. 484], there was evidence that the defendant was "highly intoxicated."

In *People* v. *Waters,* 266 Cal.App.2d 116 [71 Cal.Rptr. 863], the defendant and his companions had been drinking all day, were "pretty drunk," had had three or four half-gallons of wine and a pint of vodka and the defendant appeared to be drunk. He testified he could not remember the crime at all. A psychiatrist testified he was a chronic alcoholic and had black-out spells from heavy drinking.

In *People* v. *Garcia,* 169 Cal.App.2d 368 [337 P.2d 100], there was ample evidence that the defendant was so intoxicated that he fell over in a chair and acted as though he had passed out.

On the other hand, the giving of a *sua sponte* instruction has been excused on the basis that the evidence of intoxication was minimal or fragmentary in the following cases:

In *People* v. *Spencer, supra,* 60 Cal.2d 64, defendant testified that he had some whiskey and beer and was "pretty well plastered."

In *People* v. *Gonzales, supra,* 4 Cal.App.3d 593, the defendant testified that he had drunk 12 beers and some wine and thought he was drunk.[1]

In *People* v. *Crawford, supra,* 259 Cal.App.2d 874, the defendant had had seven drinks and was "beginning to weave [the] truck a little bit." (P. 878.)

■ In summary, the mere fact that a defendant may have been drinking prior to the commission of a crime does not establish intoxication or require the giving of even a requested instruction thereon. (*People* v. *Turville,* 51 Cal.2d 620, 633 [335 P.2d 678], disapproved on another ground in *People* v. *Morse, supra,* 60 Cal.2d 631.) Evidence of intoxication which calls for a *sua sponte* instruction must be substantial. ■ We find that the record in this case does not reflect substantial evidence of intoxication sufficient to alert the trial judge that diminished capacity was an issue in the case.

In *People* v. *Rodriguez, supra,* 274 Cal.App.2d 487, this court viewed with some alarm the seeming blurring of standards between the "substantial evidence" rule of *Wade, supra,* and the "any evidence" rule of *Carmen, supra,* in diminished capacity-intoxication cases. But the cases which contributed to this blurring of standards, *People* v. *Henderson,* 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677]; and *People* v. *Castillo, supra,* 70 Cal.2d 264, were cases in which the substantial evidence test was in fact met, though the "any evidence" language of *Carmen* was quoted. By not only applying the substantial evidence test, but also citing *Henderson* and *Castillo* for this test, the Supreme Court in *People* v. *St. Martin, supra,* 1 Cal.3d 524, 531, has apparently settled this confusion as to the ap-

---

[1]"For this court, on the basis of a cold record of Trevino's having consumed an indeterminate amount of beer, to now second-guess all the attorneys and the trial court, and rule that the evidence of Trevino's intoxication was such as to require a diminished capacity instruction, *sua sponte,* will open the floodgates to such demands in all other cases where there is testimony that the defendant had the proverbial 'couple of beers.' This we decline to do." (*People* v. *Gonzales, supra,* 4 Cal.App.3d 593, 608.)

plicable test. (See *People* v. *Small,* 7 Cal.App.3d 347, 356 [86 Cal.Rptr. 478].) Nevertheless, the warning to trial courts uttered in *Rodriguez* still has validity. ■ Whenever there is evidence of intoxication and the possibility of a diminished capacity issue exists, discretion would indicate that the trial court either instruct on intoxication or at least discuss the matter with defense counsel and secure for the record a waiver of such an instruction with the assent of the defendant. This will insure that the instruction will be given in a proper case and remove from the appellate courts the task of weighing the evidence of intoxication to determine if it is "substantial," or—"fragmentary," "minimal," "sketchy," "thin," or "speculative."

## II.

### DEFENDANT ALLEGES THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL FAILED TO UTILIZE EVIDENCE OF DIMINISHED CAPACITY TO FORMULATE THE REQUISITE SPECIFIC INTENT.

■ As stated above, the evidence of intoxication was slight and ran headlong into other evidence which disproved it utterly. Defense counsel made a tactically sound decision to attack the credibility of Mr. Burchfield and to attempt to create a reasonable doubt that the defendant committed the crime at all. He did this with a vigorous and skillful attack on the credibility of Mr. Burchfield as well as that of Mr. Springfield and the complaining witness. Unfortunately for the defendant, the jury simply did not buy the theory—probably because the testimony of the complaining witness corroborated the testimony of Mr. Burchfield and destroyed the credibility of the defendant as to the robbery. As stated, the tactical decision of defense counsel was sound. For an attorney to ask a jury to find there was a reasonable doubt that the defendant had the intent to steal from the facts in this case would be foolhardy.

■ The fact that even the defense of nonparticipation was not accepted by the jury does not inure to the benefit of the defendant at this stage of the proceedings. The fact that the strategy was unrewarding is no ground for the conclusion that defense counsel was incompetent or lacked diligence. (*People* v. *Silva,* 266 Cal.App.2d 165, 175 [72 Cal.Rptr. 38].)

This tactic may have been the best of those possible; but even if it was not, matters of strategy are best left to defense counsel and are based largely on their judgment. Tactical decisions will not be reviewed with the hindsight of an appellate court. (See *People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Garrison,* 246 Cal.App. 2d 343, 350-351 [54 Cal.Rptr. 731].)

■ There is no indication here that, as in *People* v. *McDowell*, 69 Cal.2d 737 [73 Cal.Rptr. 1, 447 P.2d 97], defense counsel was ignorant of or misunderstood the law regarding diminished capacity. Appellant's trial counsel presumably made an informed choice of defense. Urging both nonparticipation and diminished capacity would have been inconsistent and confusing to the jury.[2]

Nor is there any suggestion that the defense was withheld because of ignorance of facts which might raise it, and, therefore, without any real judgment by counsel at all, as occurred in *In re Saunders*, 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921].

■ Defendant has the burden of establishing his allegation of inadequate representation, not as a matter of speculation, but as a demonstrable reality. (*People* v. *Reeves*, 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) ■ Here, defendant had the benefit of the counsel of a skilled, experienced deputy public defender, and his trial, due to this advocacy, fairly protected his rights. The trial was far from a "farce or sham." (*People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

Judgment affirmed.

Tamura, J., and Kaufman, J., concurred.

---

[2]"Absence of an intoxication instruction was justified as a tactical choice, for the jurors might have viewed it as a court-sponsored invitation to disbelieve defendant's claim of alibi and his testimony of 'three-four' drinks." (*People* v. *Crawford, supra*, 259 Cal.App.2d 874, 880.)