[Crim. No. 13471. Third Dist. May 31, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JUANITA WHITLER, Defendant and Appellant.

338

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Mark E. Cutler, Chief Assistant State Public Defender, and Robert Scarlett, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Nancy Sweet, Supervising Deputy Attorney General, and Thomas Y. Shigemoto, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**EVANS, Acting P. J.**—Defendant was found guilty of first degree murder. (Pen. Code, § 187.)[1] On appeal she contends, (1) the provisions of sections 25, 28, and 29 violate her constitutional right to present a defense, or, in the alternative, sections 28 and 29 were impliedly repealed by Proposition 8, and (2) the trial court failed to properly instruct the jury on her defense that she lacked the proper mental state. We shall affirm.

Defendant shot and killed her estranged common-law husband Benjamin Lancaster. On the morning before the killing, defendant had become very upset over news of her uncle's death. She drank two glasses of wine during the day. Lancaster had agreed to give defendant a ride to the bus station so she could travel to San Jose for the uncle's funeral; defendant refused the offer after Lancaster asked if she was "celebrating" her uncle's death. Later, defendant stated she could "kill [Lancaster] for what he had done." Defendant's daughter Maria drove defendant to the body shop where Lancaster worked; she walked into the body shop and entered the bathroom.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

Maria heard a shot and saw Lancaster running from the shop; defendant ran after him and shot him again. Lancaster died as the result of a severed aorta.

At trial defendant did not deny killing Lancaster, but placed in issue her state of mind at the time of the shooting. She testified about her abusive childhood, failed marriages, and suicide attempts. Defendant stated she could not remember what occurred on the day of the shooting after Lancaster asked if she was celebrating her uncle's death, except for remembering seeing Lancaster dying on the ground.

A psychiatrist and a psychologist testified defendant suffered from various mental disorders, but were precluded from testifying as to their opinion of her mental state at the time of the shooting.

I

■ Defendant contends sections 25, 28, and 29[2] violate her constitutional right to effectively present a defense, as those sections prevented her from introducing evidence she lacked the capacity to formulate malice aforethought and also prevented her from introducing testimony by an expert that as the result of a mental disorder she did not possess the requisite mental state at the time of the killing.

We do not agree. In *People* v. *Jackson* (1984) 152 Cal.App.3d 961, 968-969 [199 Cal.Rptr. 848], the reviewing court held sections 28 and 29 are legitimate legislative determinations on the admissibility of certain classes of evidence and do not deprive a defendant of his or her right to present a

---

[2]Section 25 states in the relevant part: "(a) The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to·form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged."

Section 28 states in the relevant parts: "(a) Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged. [¶] (b) As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action or juvenile adjudication hearing."

Section 29 states "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact."

defense. We agree with that conclusion and shall abide by it. The holding in *Jackson* also compels the conclusion section 25 does not violate due process. Although differing viewpoints on the interaction between sections 25, subdivision (a), and 28 exist, i.e., some consider the statutes cover the same subject and others consider them to be complementary, the legislative mandate is clear—the defense of diminished capacity has been abolished. (*People* v. *Spurlin* (1984) 156 Cal.App.3d 119, 128 [202 Cal.Rptr. 663].)

■ We also reject defendant's argument that Evidence Code section 805, which permits opinion evidence embracing an ultimate issue to be decided by the trier of fact, is controlling over section 29. As the more specific provision, section 29 must prevail. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].)

II

■ Next, defendant argues that assuming arguendo sections 28 and 29 do not violate due process, they were impliedly repealed by the initiative measure known as Proposition 8. For reasons which follow, we need not address the question of implied repeal as a result of the adoption of Proposition 8.

Section 29 was first added to the Penal Code in 1981. (Stats. 1981, ch. 404, § 5, p. 1593.) The act which added section 29 also amended section 22 and disallowed evidence of voluntary intoxication to negate the capacity to form the requisite mental state, and added section 28. The overall purpose of the bill was to eliminate diminished capacity as a defense and to disallow experts to testify to the ultimate fact of a defendant's mental state. Instead, by legislative choice, a defendant is now faced with the arguably more difficult task of showing a mental disease or defect *actually* prevented him from forming the requisite state of mind, and is limited in his use of expert testimony. (*People* v. *Jackson, supra,* 152 Cal.App.3d at p. 968.)

Dr. Globus admitted on cross-examination there are a considerable number of eminent psychiatrists who believe psychiatric testimony should not be allowed in the guilt phase of a trial because of the difficulty involved in expressing an objective opinion on the matter of state of mind. He also testified it is the position of the American Medical Association that psychiatrists should not testify in the guilt phase. As stated in *People* v. *Jackson, supra,* "The ultimate issue to be decided is, after all, a legal issue, not a scientific one." (152 Cal.App.3d at p. 969.) We must uphold the voters' intent and reject defendant's argument.

Defendant was permitted to produce psychiatric testimony regarding her mental condition at the time of the killing. She was precluded only from

introducing capacity evidence and from asking her psychiatric experts whether she had the requisite mental state at the time of the shooting. That limitation did not prevent defendant from presenting her defense. Sections 25, subdivision (a), 28, and 29, do not contravene any constitutional due process rights of defendant to use witnesses or to equal protection. Likewise, they do not relieve the prosecution of its burden of proof. (See *People v. Jackson, supra,* 152 Cal.App.3d at pp. 968-970.)

Even if we were to assume section 29 was repealed by implication, defendant has suffered no prejudice from the exclusion of Globus' and Wilson's opinion of her mental state at the time of the killing. Former section 29 was statutorily repealed in 1984, and by a two-thirds vote of both houses, replaced with current section 29. (Stats. 1984, ch. 1433, §§ 2, 3.) Thus, if we were to reverse and remand for retrial, defendant would again be precluded from introducing that evidence. The statute is obviously procedural in nature, not affecting any constitutional rights of defendant (*People v. Jackson, supra,* 152 Cal.App.3d at pp. 968-970); it would apply to the retrial even though the underlying act took place prior to the reenactment of section 29. (*City of Sausalito v. County of Marin* (1970) 12 Cal.App.3d 550, 557 [90 Cal.Rptr. 843].) Reversal on this point would be a meaningless gesture.

In light of our conclusion in section I, above, we need not address defendant's argument the trial court erred in failing to instruct the jury on diminished capacity.

The judgment is affirmed.

Carr, J., concurred.

**SIMS, J.**—I concur in all aspects of the majority opinion but write separately to address defendant's contention of instructional error.

Defendant contends the court had a *sua sponte* duty to give instructions relating her evidence of mental disease to the mental states required for various specie of homicide—from murder to manslaughter. The argument is predicated on a series of California Supreme Court cases promulgating a duty to give instructions relating the defense of diminished capacity to such mental states. (See, e.g., *People v. Mosher* (1969) 1 Cal.3d 379, 389-393 [82 Cal.Rptr. 379, 461 P.2d 659]; *People v. Castillo* (1969) 70 Cal.2d 264, 270 [74 Cal.Rptr. 385, 449 P.2d 449]; *People v. Conley* (1966) 64 Cal.2d 310, 324, fn. 4 [49 Cal.Rptr. 815, 411 P.2d 911].)

These cases represent variations of the familiar rule that a trial court has a *sua sponte* duty to give instructions relating a recognized defense to ele-

ments of a charged offense. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].) As my colleagues correctly note, the defense of diminished capacity has been abolished. A defendant may still defend against a charge of homicide by presenting evidence of mental disease or defect sufficient to raise a reasonable doubt that he or she in fact had the requisite mental state at the time of the offense. (See *People* v. *Jackson* (1984) 152 Cal.App.3d 961, 968 [199 Cal.Rptr. 848].)[1] However, when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a trial court may well have a duty to give a "pinpoint" instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such "pinpoint" instructions are not required to be given *sua sponte* and must be given only upon request. (See *People* v. *Hall* (1980) 28 Cal.3d 143, 158-159 [167 Cal.Rptr. 844, 616 P.2d 826]; *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845]; *People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847]; *People* v. *Adrian* (1982) 135 Cal.App.3d 335, 339 [185 Cal.Rptr. 506].) Since no such instructions were requested here, there was no error.

Petitions for a rehearing were denied June 25, 1985, and appellant's petition for review by the Supreme Court was denied September 12, 1985.

---

[1]Indeed, a contrary conclusion would prohibit a defendant from presenting reliable and relevant evidence to controvert the charge in violation of federal constitutional rights to due process of law. (See *Hendershott* v. *People* (Colo. 1982) 653 P.2d 385.)