[Crim. No. 12201. In Bank. Aug. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT WAYNE TIDWELL, Defendant and Appellant.

## COUNSEL

William H. Lally, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and Jack R. Winkler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.**—Defendant and his brother, William Tidwell, were indicted for the murders of Jesse Levoy DeForest, Mary Jeannette DeForest and Keith Eugene Utterback. Following separate trials by jury, both brothers were convicted of murder in the first degree on all three counts and sentenced to death. Defendant's motions for a new trial and for reduction of the penalty were denied, and defendant's automatic appeal is now before us. (Pen. Code, § 1239, subd. (b).)

As set forth in *People* v. *William Tidwell, ante,* page 62 [89 Cal. Rptr. 44, 473 P.2d 748], we have concluded that the trial court improperly denied the joint motion of defendant and his brother for a change of venue from Lassen County. Accordingly, the convictions of first degree murder entered against defendant must be reversed.

■ We have also concluded that the convictions must be reversed because the trial court inadequately instructed the jury as to voluntary and involuntary manslaughter and felony murder in the context of defendant's diminished capacity defense. For the guidance of the trial court on retrial, we discuss that issue here.

At trial, defendant raised the defense of diminished capacity by testifying that he was ordinarily a non-drinker, and had never before been intoxicated; that on the day of the murders, he had consumed varying quantities of wine, beer and gin; and that he became drunk, fell asleep, and had only a vague recollection of a naked woman (Mrs. DeForest's body was naked when discovered), of hearing a shot, and of his brother taking a knife from him. Although much of the foregoing evidence was contradicted by a confession defendant made to police officers on August 25, 1967, the evidence was at least sufficiently "deserving of consideration" (*People* v. *Graham,* 71 Cal.2d 303, 316 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Modesto,* 59 Cal.2d 722, 729 [31 Cal.Rptr. 225, 382 P.2d 33]), to have required in-

structions which would have fully presented the defense of diminished capacity to the jury.

 The trial court properly instructed the jury that diminished capacity may prevent one from forming any of the specific mental states which are essential elements of murder, and may prevent premeditation, malice, willfulness, or deliberation which are necessary to a finding of murder in the first degree.

The trial court also instructed the jury on the elements of first and second degree murder in accordance with Penal Code sections 187-189, and informed the jury that it could not find defendant guilty of murder in the first or second degree if it determined that the element of malice was rebutted by evidence of defendant's diminished capacity.

However, the court failed to instruct the jury regarding voluntary manslaughter, thereby excluding the jury from considering manslaughter as the offense for which it should find defendant guilty if it determined that malice was rebutted by evidence of defendant's intoxication. The court's omission was error (*People* v. *Castillo,* 70 Cal.2d 264, 269-271 [74 Cal.Rptr. 385, 489 P.2d 449]; *People* v. *Conley,* 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911]), and the error was prejudicial per se since defendant was thereby denied a jury trial on all of the issues presented by the evidence (*People* v. *Mosher,* 1 Cal.3d 379, 390 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Modesto, supra,* 59 Cal.2d 722, 730-731).

 The trial court also erred in failing to instruct the jury on the aspects of involuntary manslaughter in the context of a diminished capacity defense. As stated in *People* v. *Graham, supra,* 71 Cal.2d 303, 316-317: "Intoxication may so diminish a person's mental capacity that he is unable to achieve a specific state of mind requisite to any offense; yet if the intoxication is voluntarily induced, it can never excuse homicide. [Citation.] Thus, the requisite element of criminal negligence is deemed to exist irrespective of unconsciousness, and a defendant stands guilty of involuntary manslaughter if he voluntarily procured his own intoxication."

If, upon retrial, there is evidence which indicates that defendant was unconscious at the time of the offenses due to voluntary intoxication, the trial court should instruct on involuntary manslaughter as specified in *People* v. *Graham, supra,* 71 Cal.2d 303, 317, footnote 4. In addition, if there is evidence which indicates that defendant was unconscious for reasons outside his control, the trial court should instruct on unconsciousness. (Pen. Code, § 26, subd. 5; *People* v. *Mosher, supra,* 1 Cal.3d 379, 391; *People* v. *Wilson,* 66 Cal.2d 749, 761 [59 Cal.Rptr. 156, 427 P.2d 820].)

■ The trial court instructed the jury on the felony-murder doctrine in the context of "the perpetration or attempt to perpetrate robbery or burglary," and defined the crimes of robbery and burglary, and the specific intent required to establish either crime. However, the trial court failed to instruct the jury that defendant's diminished capacity might rebut the specific intent required for the perpetration or attempt to perpetrate robbery or burglary, and therefore might prevent the jury from finding defendant guilty of first degree murder under the felony-murder doctrine. Such an instruction is required whenever defendant makes a sufficient factual showing of a diminished capacity which would prevent him from forming the requisite specific intent which is a necessary element of the felony charged in a felony-murder prosecution. (*People* v. *Mosher, supra,* 1 Cal.3d 379, 391-393; *People* v. *Ketchel,* 71 Cal.2d 635, 641 [79 Cal.Rptr. 92, 456 P.2d 660]; *People* v. *Ford,* 65 Cal.2d 41, 58, fn. 9 [52 Cal.Rptr. 228, 416 P.2d 132].)

■ There is no basis for holding that the failure to give instructions on voluntary manslaughter, involuntary manslaughter and felony murder in the context of a diminished capacity defense constituted invited error attributable to defendant's counsel. In the absence of anything in the record disclosing that counsel had "a deliberate tactical purpose in suggesting, resisting, or acceding to an instruction," we must assume that counsel merely failed to request the additional instructions because of neglect or mistake, which would be insufficient to nullify the trial court's obligation to properly instruct the jury on all the issues presented in that case. (*People* v. *Mosher, supra,* 1 Cal.3d 379, 393; *People* v. *Graham, supra,* 71 Cal.2d 303, 320; see *People* v. *Wilson, supra,* 66 Cal.2d 749, 762-763; *People* v. *Phillips,* 64 Cal.2d 574, 581 [51 Cal.Rptr. 225, 414 P.2d 353].)

The People suggest that the following portion of defense counsel's closing argument to the jury indicated that counsel had abandoned the defense of diminished capacity: "I say this in connection with intoxication. *I shall believe this boy was not intoxicated*; he was so under the will of his elder brother that he did not have free action. He wasn't a free agent. He did not have any sense of election to determine what he would or didn't want to do." (Italics added.) Although this excerpt suggests that counsel favored a defense theory other than intoxication, a subsequent excerpt from his closing argument discloses that he still relied to some extent on this defense: "Something about intoxication. Most people are familiar with intoxication, but we do know when people are intoxicated they react in different ways; some minds are completely blacked out; some people can drive a car, and their physical control is perfect, but they have no mind, their speech is spoken with a thick tongue. . . . So, it isn't unreasonable when this boy says that

he, not being an experienced drinker, would believe he drank too much gin and didn't know from then on what was going on around him. *And he could not have been an actor under those circumstances.* If he hadn't eaten that day, and that too is the crazy part of the life, that he would go all day without eating." (Italics added.) Moreover, the prosecutor assumed that diminished capacity remained a defense in the case, for in his closing argument, following defense counsel's remarks set forth above, he stated: "The law will tell you he is presumed to be sane. However, you have this possibility of diminished responsibility due to drinking. That can enter into the intent or the reason for actions having been committed, and I know that you will pay close attention to the instructions as given to you by the Court."

The judgment of convictions of first degree murder entered against defendant Robert Wayne Tidwell is reversed. The case is remanded to the Lassen County Superior Court, and that court is directed to hold a hearing to determine where a fair and impartial trial can be had, and to transfer the cause accordingly.

**BURKE, J.**—I concur with the majority in reversing the judgment of defendant's convictions for failure to instruct properly regarding diminished capacity. However, for the reasons stated in my dissenting opinion in *People* v. *William Tidwell, ante,* page 62 [89 Cal.Rptr. 44, 473 P.2d 748], I do not join with the majority with respect to the denial of defendant's motion for change of venue. I would uphold the trial court's denial of the motion.

**McCOMB, J.**—I dissent. I would affirm the judgment.

Respondent's petition for a rehearing was denied September 24, 1970. McComb, J., and Burke, J., were of the opinion that the petition should be granted.