Filed 8/24/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VINCENT MEDRANO,<br><br>    Defendant and Appellant. | 2d Crim. No. B306749<br>(Super. Ct. No. CR28216)<br>(Ventura County) |

Vincent Medrano appeals from an order denying his Penal Code section 1170.95 petition for resentencing.[1] In 1991 appellant was convicted of two counts of first degree murder with a multiple death special circumstances finding (§§ 187, 189, 190.2, subd. (a)(3)), two counts of attempted first degree murder (§§ 664/187, 189), and one count of conspiracy to commit first degree murder (§ 182). The jury found true allegations that a principal in the commission of the offenses had been armed with a firearm. (§ 12022, subd. (a)(1).) Appellant was sentenced to prison for 50 years to life plus one year for a firearm

---

[1] All statutory references are to the Penal Code.

enhancement.  In 1994 we affirmed the judgment in an unpublished opinion, *People v. Medrano* (Jul. 26, 1994, B065832).

Appellant was still incarcerated in 2019 when he filed his section 1170.95 petition.  We hold that section 1170.95 relief is unavailable to a petitioner concurrently convicted of first degree murder and conspiracy to commit first degree murder where both convictions involve the same victim.  Why?  Conviction of conspiracy to commit first degree murder shows, as a matter of law, that the "target offense" is murder, not some other lesser offense.  Accordingly, we affirm.

## *Facts*

The following facts are taken primarily from the factual statement in our 1994 opinion.  Appellant and Carlos Vargas purchased a .22 caliber semi-automatic rifle.  Appellant "scored" the "tip" of the rifle's bullets in the belief that "the scoring would make the bullets more explosive."  As overt act #7 underlying the conspiracy charge, the jury found that appellant, Vargas, Edward Throop, and Joseph Scholle "discussed among themselves committing a drive-by shooting."  Vargas drove them to Cabrillo Village in Ventura County.  "Throop held the rifle and sat in the back seat next to appellant."  Throop pointed the rifle out the window and fired multiple shots at a group of people attending a baptism party.  As Vargas drove away, Scholle shouted the names of rival gangs.  Two men attending the baptism party died of gunshot wounds.  Two other men were shot but survived.

## *Appellant's Petition*

In his pre-printed section 1170.95 petition, appellant checked boxes declaring that (1) a pleading had been filed against him that "allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable

2

consequences doctrine," (2) he was convicted of first degree murder "pursuant to the felony murder rule or the natural and probable consequences doctrine," and (3) he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189 [by Senate Bill 1437 (S.B. 1437)], effective January 1, 2019."

*S.B. 1437*

Section 1170.95 was added to the Penal Code by S.B. 1437, which modified the felony-murder rule and eliminated the natural and probable consequences doctrine. "Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state. [Citation.] . . . [¶] Independent of the felony-murder rule, the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense. [Citation.]" (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-248.)

In S.B. 1437 the Legislature declared, "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To achieve this goal, S.B. 1437 amended section 189, insofar as it

3

pertains to the felony-murder rule, to add subdivision (e), which provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer. (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

S.B. 1437 also amended section 188 to add subdivision (a)(3), which provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.) The Legislature declared, "A person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (*Id*., § 1, subd. (g).) "[T]he most natural reading of Senate Bill 1437's operative language is that it eliminates natural and probable consequences liability for first and second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 849 (*Gentile*).)

Section 1170.95 gives retroactive effect to the changes in sections 188 and 189. It provides, "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when" certain conditions apply. (§ 1170.95, subd. (a).) One of the conditions is

4

that "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made [by S.B. 1437] effective January 1, 2019." (*Id.*, subd. (a)(3).) The petition must include a declaration by the petitioner showing that he is eligible for the relief afforded by section 1170.95. (*Id.*, subd. (b)(1)(A).)

"The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of [section 1170.95]. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c), italics added.) "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner . . . ." (*Id.*, subd. (d)(1).) "At the hearing . . . , the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . . The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Id.*, subd. (d)(3).)

*Trial Court's Ruling*

After issuing an order to show cause, the trial court conducted a hearing at which the prosecutor was required to prove beyond a reasonable doubt that appellant is ineligible for relief. The court ruled that appellant is ineligible because he could now be convicted of murder. It denied section 1170.95 relief.

5

*Alleged Forfeiture Based on People's Failure to Appeal*

Appellant contends, "[T]he People's failure to appeal the [trial court's] Order to Show Cause forfeits the issue of whether appellant's conspiracy conviction bars relief under section 1170.95 as a matter of law." As authority for the People's right to appeal the order to show cause, appellant cites section 1238, subdivision (a)(5), which states that the People may appeal "[a]n order made after judgment, affecting the *substantial rights* of the people." (Italics added.)

The order to show cause was made after judgment, but it did not affect the People's substantial rights because it was a "preliminary eligibility determination" that did not "alter[] the judgment, its enforcement, or [appellant's] relationship to it." (*People v. Montellano* (2019) 39 Cal.App.5th 148, 157.) Therefore, the order to show cause was not appealable. Even if it were appealable, the People would not be barred from arguing that at the show-cause hearing they had proved appellant is ineligible for resentencing because he was convicted of conspiracy to commit first degree murder.

*Appellant's Conspiracy Conviction Precludes*
*Relief under Section 1170.95*

Section 1170.95 applies only to persons "convicted of felony murder or murder under a natural and probable consequences theory." (*Id.*, subd. (a).) Appellant was not convicted of felony murder. The jury was not instructed on this theory of murder. The indictment does not charge, and the evidence does not show, the commission of a predicate felony necessary for application of the felony-murder rule. "A felony murder arises when a killing occurs in the course of the commission of one of the predicate felonies enumerated in Penal Code section 189." (*People v.*

6

*Anderson* (2006) 141 Cal.App.4th 430, 446; see *Gentile*, *supra*, 10 Cal.5th at p. 848 [felony-murder rule inapplicable because "[t]he jury in Gentile's case was never instructed on the felony-murder rule, and Gentile was not charged with a predicate felony that can serve as the basis for felony murder"].)

The jury was instructed on the natural and probable consequences doctrine. But appellant was not convicted of first degree murder under this doctrine. "Under the natural and probable consequences theory of aiding and abetting a murder, a defendant can be found guilty of murder if he or she aids and abets a crime (i.e., the target crime) and murder (i.e., the nontarget crime) is a natural and probable consequence of that target crime." (*People v. Chavez* (2018) 22 Cal.App.5th 663, 683.) Here, *the target offense was first degree murder*. We know this because appellant was convicted of conspiracy to commit first degree murder. "[A] conviction of conspiracy to commit murder requires a finding of intent to kill." (*People v. Swain* (1996) 12 Cal.4th 593, 607 (*Swain*).) "'[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder.'" (*People v. Beck & Cruz* (2019) 8 Cal.5th 548, 641 (*Beck & Cruz*).)

During closing argument to the jury, the prosecutor said, "I'll be arguing to you that [appellant] clearly did harbor the intent to kill and . . . he wanted . . . that group of people to be shot and people killed." By convicting appellant of conspiracy to commit first degree murder, the jury accepted the prosecutor's argument.

The jury in effect found that appellant was a direct aider and abettor of the killings. "Liability for intentional, target offenses is known as 'direct' aider and abettor liability; liability

7

for unintentional, nontarget offenses is known as the ""'natural and probable consequences' doctrine."'" (*In re Loza* (2018) 27 Cal.App.5th 797, 801.) "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile, supra,*10 Cal.5th at p. 848.)

The following statement of our Supreme Court in *Beck & Cruz* applies with equal weight to appellant: "Beck and Cruz were charged with conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder. There is thus no possibility they were found guilty of murder on a natural and probable consequences theory." (*Beck & Cruz, supra*, 8 Cal.5th at p. 645.)

Appellant argues that, because of instructions given to the jury after it had started deliberating, the jury did not necessarily find that he had harbored an intent to kill when it convicted him of conspiracy to commit first degree murder. The jury sent a note to the court asking: "Does [appellant] have to have believed that Throop meant to kill in order for [appellant] to be guilty of aid & abet in first degree? Does natural consequence of 'shooting' include murder in the first degree (premeditated murder)[?]" In reply to the jury's question, the court instructed that, to convict appellant of first degree murder, it need not find that he harbored the specific intent to kill. The jury could find appellant guilty of first degree murder if the crime was a natural and probable consequence of the acts that he had aided and abetted.[2]

---

[2] The court said: "The derivative criminal liability of an aider and abettor for a perpetrator's crime may exist even though that crime was unintended by the aider and abettor. [¶] The principal committing the crime and his aider and abettor need

8

But in convicting appellant of first degree murder, the jury did not rely on the natural and probable consequences doctrine because it found him guilty of conspiracy to commit first degree murder. According to an instruction given before the jury started its deliberations (CALJIC No. 6.10), it could convict appellant of conspiracy to commit first degree murder only if it found he had acted "with the specific intent to agree to commit the public offense of first degree murder and with the further specific intent to commit such offense." In view of this instruction, the conspiracy conviction shows that the jury found appellant had specifically intended to commit first degree murder.

Appellant notes that the court gave CALJIC No. 6.11, which he claims "instructed the jury that [he] . . . could be guilty of conspiracy to commit murder under the natural and probable consequences doctrine." CALJIC No. 6.11 did not so instruct the jury. As given, the instruction provided in relevant part: "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but is also liable for *the natural and probable consequences of any act of a co-conspirator to further the object of*

---

not possess the same intent in order to be criminally responsible for the committed crime. [¶] The test is whether the perpetrator's criminal act, on which the aider and abettor's derivative criminal liability is based, was a natural and probable consequence of any criminal act that he knowingly and intentionally aided and abetted. [¶] Whether any of the crimes charged in the Indictment (including murder in the first degree) or any of the lesser crimes was a natural and probable consequence of any criminal act that was knowingly and intentionally aided and abetted is for you the jury to decide."

9

*the conspiracy*, even though such act was not intended as a part of the original plan . . . ." (Italics added.) Appellant was not convicted of conspiracy to commit first degree murder under the natural and probable consequences theory as set forth in CALJIC No. 6.11. First degree murder was the object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy.

Finally, appellant maintains that the jury did not necessarily find he had the specific intent to kill because in 1991, when he was convicted, "a defendant . . . could be convicted of conspiracy to commit murder *without* an accompanying finding of a specific intent to kill." Appellant asserts that it was not until the Supreme Court's 1996 decision in *Swain*, *supra*, 12 Cal.4th 593, that "a valid conspiracy to commit murder conviction required a specific finding of intent to kill."

*Swain* held "that a conviction of conspiracy to commit murder requires a finding of intent to kill, and cannot be based on a theory of implied malice." (*Swain*, *supra*, 12 Cal.4th at p. 607.) The court disapproved *People v. Alexander* (1983) 140 Cal.App.3d 647, to the extent it "suggested that implied malice is 'the most logical route' to establishing the crime of 'conspiracy to commit murder in the second degree.'" (*Swain*, *supra*, at p. 602.)

*Swain* did not announce a new rule of law that conspiracy to commit murder requires an intent to kill. The court stated, "[N]othing in [its] decision in *Horn* [*People v. Horn* (1974) 12 Cal.3d 290] suggests that conspiracy to commit murder can be committed without intent to kill (express malice)." (*Swain*, *supra*, 12 Cal.4th at p. 606.) In *Horn*, decided 17 years before appellant's conviction, the Supreme Court concluded, "To sustain a conviction for conspiracy to commit a particular offense, the

10

prosecution must show not only that the conspirators intended to agree but also that they intended to commit the elements of that offense." (*Horn*, *supra*, at p. 296;[3] see also *People v. Marks* (1988) 45 Cal.3d 1335, 1345 ["Conspiracy requires a dual specific intent: '(a) the intent to agree, or conspire, and (b) the intent to commit the offense, which is the object of the conspiracy'"].) Therefore, at the time of appellant's 1991 conviction, the law as enunciated by our Supreme Court required an intent to kill to sustain a conviction of conspiracy to commit first degree murder.

Irrespective of the state of the law at the time of appellant's conviction, the instructions given to the jury, specifically CALJIC No. 6.10, made clear that a conviction for conspiracy to commit first degree murder required a specific intent to commit first degree murder.[4] Since the jury convicted appellant of conspiracy to commit first degree murder, it did not base its conviction of the target offense – first degree murder – on the natural and probable consequences doctrine because that doctrine applies to unintended, nontarget offenses. (See *People v. Canizalez* (2011)

---

[3] In *People v. Cortez* (1998) 18 Cal.4th 1223, 1235, 1237-1238, *Horn* was disapproved to the extent it indicated "that 'conspiracy to commit second degree murder' is a viable offense." *Cortez* held that "all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder." (*Id.* at p. 1237.)

[4] Pursuant to CALJIC No. 6.10, the jury was instructed: "The defendant is charged in Count 5 of the Indictment with the crime of conspiracy to commit first degree murder. [¶] A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of first degree murder and with the further specific intent to commit such offense . . . ."

11

197 Cal.App.4th 832, 852 ["aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense"].)

Appellant implies that our reasoning here is inconsistent with our reasoning in the 1994 opinion in his prior appeal because there "this Court . . . held that the jury was not required to find appellant intended to kill based on law at the time and the jury instructions provided to the jury." No such inconsistency exists. In the 1994 opinion we observed that, under the natural and probable consequences doctrine, "[t]he jury was not required to find that appellant harbored the specific intent to kill." (*People v. Medrano*, *supra*, slip opn. at p. 9.) Thus, "[t]he [trial] court correctly instructed the jury that appellant may have been criminally responsible for Throop's crimes even though appellant did not intend to commit the crimes." (*Id*. at p. 14, fn. 5.) We did not consider whether, by convicting appellant of conspiracy to commit first degree murder, the jury necessarily found that he had harbored the specific intent to kill.

*Conclusion*

The prosecutor met his burden of proving, "beyond a reasonable doubt, that [appellant] is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) Appellant's conviction of conspiracy to commit first degree murder rendered him ineligible as a matter of law. The conviction established that he had not been "convicted of . . . [first degree] murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) He was

12

convicted of first degree murder under a direct aiding and abetting theory, i.e., he knew and shared the murderous intent of the actual perpetrator, Throop. (*Gentile*, *supra*, 10 Cal.5th at p. 850.)

*Disposition*

The order denying appellant's section 1170.95 petition is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>


YEGAN, J.

I concur:


GILBERT, P. J.


13

TANGEMAN, J., Dissenting:

I respectfully dissent. I do not agree that the conviction for conspiracy to commit murder automatically renders appellant ineligible for Penal Code section 1170.95[1] relief under the circumstances extant here. He appeals only from the order that he is ineligible for relief as to the first degree murder convictions (and not the conspiracy conviction).

Appellant was not the actual killer. He was present in the vehicle from which the actual killer sprayed bullets into a group of people during a drive-by shooting. There was evidence at trial that appellant wanted to fire the weapon because he was a "better aim" and could hit the victims in the legs, suggesting he did not share an intent to kill.

The jury did not readily produce a verdict. It appears that they were confused by the instructions. As acknowledged by the majority, the jury was instructed on the first degree murder charges under the natural and probable consequences doctrine (i.e., that death was a natural and probable consequence of a drive-by shooting). As to the separate count of conspiracy, the jury was instructed that "[a] member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing"—such as a drive-by shooting—"but is also liable for the natural and probable consequences of any act of a co-conspirator to further the object of the conspiracy"—such as a killing—"even though such act was not intended as a part of the original plan . . . ."

Taken in context, I cannot conclude, with that certainty advanced by the majority here, that the jury "did not rely on the natural and probable consequences doctrine" in deciding whether

---

[1] Statutory references are to the Penal Code.

1

appellant was guilty of first degree murder.  (Maj. opn. *ante*, at p. 9.)  The majority concludes otherwise because the jury was *also* instructed that the conspiracy count required proof that appellant acted "with the specific intent to agree to commit the public offense of first degree murder."  The majority speculates that the jury relied on this conspiracy instruction instead of the other conspiracy instruction quoted above (which is based on the natural and probable consequence doctrine).

There is no basis, legal or factual, for the majority's speculation.  In the face of these conflicting instructions, the jury pointedly asked the court whether they could convict appellant of first degree murder even if he did not share the shooter's intent to kill—to which the court responded *affirmatively* "even though that crime [of murder] was unintended by the aider and abettor."  Only then did the jury return a guilty verdict.

In 1994, we affirmed appellant's conviction for first degree murder.  Appellant claimed the trial court erred "in response to the jury questions" when it "equated his guilt as an aider and abettor to the guilt of the shooter."  Appellant noted that three jurors submitted affidavits that they "changed their votes to first degree murder after the judge 'answered the jury's question regarding whether it was necessary that [appellant] know whether [the shooter] meant to kill someone in order for [appellant] to be liable for first degree murder.'"  (*People v. Medrano* (Jul. 26, 1994, B065832) [nonpub. opn.] [typed opn. at p. 7] (*Medrano*).)  In affirming, we concluded the juror affidavits were inadmissible, but even if they were considered the result would not differ because "[t]he court correctly instructed the jury that appellant may have been criminally responsible for [the shooter's] crimes even though appellant did not intend to commit

2

the crimes" (*Medrano*, at p. 14, fn. 5).  While a correct statement of law then, it is an incorrect statement now, after enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.).  Now, in order to deny relief as a matter of law as the majority does here, a pivot is required, to conclude the jury actually found that appellant acted with intent to kill.  One is left to wonder why we spilled so much ink in our prior opinion on a lengthy, and unnecessary, analysis of vicarious liability law, if the jury had already found an intent to kill.

Unlike the majority, I conclude from these facts that it is at least possible the jury found only that appellant participated in a drive-by shooting, without an intent to kill.  Because the trial court did not discuss this possibility, or the reasons for its conclusions, I would remand for further proceedings.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

3

Michelle M. Castillo, Judge

Superior Court County of Ventura

_____

Claudia Y. Bautista, Public Defender, and William Quest, Deputy Public Defender, under appointments by the Court of Appeal for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.