**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARACELY MARINELARENA, *Petitioner*, v. JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | No. 14-72003 Agency No. A095-731-273 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued April 6, 2016
Resubmitted August 4, 2017
Pasadena, California

Filed August 23, 2017

Before:  A. Wallace Tashima, Barry G. Silverman,
and Susan P. Graber, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Tashima

## SUMMARY[*]

### Immigration

The panel denied in part and dismissed in part Aracely Marinelarena's petition for review of the Board of Immigration Appeals' decision finding her ineligible for cancellation of removal because she had failed to meet her burden of proof to show that her conviction was not for a disqualifying controlled substance offense.

The panel held that the conspiracy statute under which Marinelarena was convicted, California Penal Code § 182(a)(1), is overbroad but divisible as to the target crime. The panel further held that the target crime, sale and transport of a controlled substance under California Health and Safety Code § 11352, is overbroad and divisible as to the specific controlled substance. Accordingly, the panel applied the modified categorical approach and concluded that the record was inconclusive because Marinelarena's guilty plea could have rested on an overt act that did not relate to heroin.

Addressing the effect of the inconclusive record, the panel further held that *Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc), which held that a petitioner cannot carry the burden of demonstrating eligibility for cancellation of removal by establishing an inconclusive record, remains good law because it is not irreconcilable with the later Supreme Court cases of *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), and *Descamps v. United States*, 133 S. Ct. 2276 (2013).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Therefore, the panel concluded that Marinelarena is ineligible for cancellation because, with respect to eligibility for relief, she bears the burden of proof to show that her conviction did not relate to a controlled substance, and she could not meet this burden on an inconclusive record.

The panel also concluded that it lacked jurisdiction to consider Marinelarena's unexhausted claim that the expungement of her conviction removes it from the definition of conviction under the immigration laws.

Dissenting, Judge Tashima disagreed with the majority's conclusion that *Moncrieffe* does not abrogate *Young*, concluding that the decisions are irreconcilable. Judge Tashima would grant the petition for review.

## COUNSEL

Andrew Knapp (argued), Supervising Attorney; Laura Free (argued), Isis Miranda (argued), Lilit Arabyan, and Eric M. Sowatsky, Certified Law Students; Southwestern Law School, Los Angeles, California; for Petitioner.

Tim Ramnitz (argued), Attorney; Jennifer P. Levings, Senior Litigation Counsel; Shelley R. Goad, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Brian Goldman (argued), Orrick Herrington & Sutcliffe LLP, San Francisco, California; Manuel Vargas and Andrew Wachtenheim, Immigrant Defense Project, New York, New York; Jayashri Srikantiah and Lisa Weissman-Ward,

Immigrants' Rights Clinic, Mills Legal Clinic, Stanford Law School, Stanford, California; for Amici Curiae Immigrant Defense Project, American Immigration Lawyers Association, Asian Americans Advancing Justice-Asian Law Caucus, Community Legal Services in East Palo Alto, Detention Watch Network, Florence Immigrant and Refugee Rights Project, Heartland Alliance's National Immigrant Justice Center, Immigrant Legal Resource Center, National Immigration Law Center, National Immigration Project of the National Lawyers Guild, Northwest Immigrant Rights Project, Public Counsel, and U.C. Davis Immigration Law Clinic.

**OPINION**

GRABER, Circuit Judge:

Petitioner Aracely Marinelarena, a native and citizen of Mexico, stands convicted of conspiring to sell and transport a controlled substance in violation of California Penal Code section 182(a)(1). After the federal government initiated removal proceedings, she conceded removability but applied for cancellation of removal under 8 U.S.C. § 1229b(b). The immigration judge ("IJ") denied relief. The Board of Immigration Appeals ("BIA") held that Petitioner had fallen short of meeting her burden of proof, by failing to show that her conviction was *not* for a disqualifying controlled substance offense, and dismissed the appeal. We hold that the conspiracy statute under which Petitioner was convicted is overbroad but divisible, that Petitioner failed to carry her burden of proof to demonstrate that her conviction did not involve a federally controlled substance, and that she has failed to exhaust the argument that expungement of her

conviction erases its immigration consequences. Accordingly, we deny the petition for review in part and dismiss it in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner first entered the United States in 1992 without admission or inspection. In 2000, she was convicted of false personation of a public officer, in violation of California Penal Code section 529. In 2006, the State of California filed a criminal complaint against Petitioner that charged her with one count of conspiring to commit a felony, in violation of California Penal Code section 182(a)(1). Specifically, it charged Petitioner with conspiring to sell and transport a controlled substance in violation of California Health and Safety Code section 11352. The criminal complaint alleged several overt acts in furtherance of the conspiracy, one of which—the transportation of three bags containing heroin—referred to a particular controlled substance. On March 26, 2007, pursuant to a plea of guilty, Petitioner was convicted of violating California Penal Code section 182(a)(1). The state court sentenced her to 136 days' imprisonment and three years' probation.[1]

Two days later, the government served Petitioner with a notice to appear for removal proceedings. The notice charged Petitioner with removability as an alien who had remained in

---

[1] At her removal hearings, Petitioner submitted the complaint to the IJ and admitted that she was "convicted solely of Count 1 of the Complaint," which alleged that she had committed "the crime of CONSPIRACY TO COMMIT A CRIME, in violation of PENAL CODE SECTION 182(a)(1)," specifically, conspiring "to commit the crime of SELL AND TRANSPORT, in violation of Section 11352 of the HEALTH AND SAFETY Code."

the United States longer than permitted, in violation of 8 U.S.C. § 1227(a)(1)(B). Petitioner conceded removability but applied for cancellation of removal under 8 U.S.C. § 1229b(b). Around the same time, Petitioner filed separate motions in state court to vacate her false personation and conspiracy convictions under California Penal Code section 1203.4. In 2009, California courts granted Petitioner's motions and vacated those convictions.

At a removal hearing in 2011, Petitioner argued that her conspiracy conviction did not constitute a controlled substance offense as defined by the Controlled Substances Act, 21 U.S.C. § 802, because the conviction documents do not specify the controlled substance. Petitioner also argued that she was eligible for cancellation of removal because her convictions had been vacated.

In 2012, the IJ held that Petitioner had failed to meet her burden to demonstrate eligibility for cancellation of removal and ordered her removed to Mexico. The IJ reasoned that Petitioner had failed to show that she was eligible for relief despite her convictions for false personation and conspiracy to sell and transport a controlled substance. The IJ noted that Petitioner's false personation conviction under California Penal Code section 529 appeared to qualify as a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). The IJ also noted that Petitioner's conspiracy conviction under California Penal Code section 182(a)(1) "for conspiracy to distribute heroin" barred her from relief because it was a disqualifying controlled substance offense. Lastly, although both convictions had been vacated, the IJ held that, because the convictions were not vacated on the merits, they remained valid for immigration purposes.

On appeal, the BIA held that Petitioner had failed to establish that her conspiracy conviction did *not* qualify as a controlled substance offense under 8 U.S.C. § 1182(a)(2)(A)(i)(II). The BIA explained that, although California Health and Safety Code section 11352 is broader than the Federal Controlled Substances Act, 21 U.S.C. § 802, because the state law covers more drugs than the federal definition, Petitioner submitted no evidence identifying the controlled substance and, therefore, did not meet her burden of proof. The BIA did not reach the IJ's additional ruling that Petitioner's false personation conviction was a crime involving moral turpitude. Nor did it reach the expungement question, because Petitioner did not raise it in her briefing to the BIA.

Petitioner timely petitions for review. We also granted a motion by a group of interested entities to file a joint amicus brief.

## STANDARD OF REVIEW

We review de novo questions of law and constitutional claims. *Coronado v. Holder*, 759 F.3d 977, 982 (9th Cir. 2014).

## DISCUSSION

### A. *Controlled Substance Offense*

To be eligible for cancellation of removal under 8 U.S.C. § 1229b(b), a petitioner must meet the following requirements: (1) have been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of application; (2) have been

a person of good moral character during that period; (3) not have been convicted of, as applicable here, a controlled substance offense; and (4) show that removal would cause "exceptional and extremely unusual hardship" to a family member who is a citizen of the United States or an alien lawfully admitted for permanent residence. Our analysis concerns the third requirement—that the petitioner not have been convicted of a controlled substance offense.

To determine whether a state conviction qualifies as an offense relating to a controlled substance as defined under federal law, we employ the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990). "First, we ask whether the state law is a categorical match with a federal [controlled substance] offense," looking "only to the 'statutory definitions' of the corresponding offenses." *United States v. Martinez-Lopez*, No. 14-50014, 2017 WL 3203552, at *3 (9th Cir. July 28, 2017) (en banc) (quoting *Taylor*, 495 U.S. at 600). "If a state law proscribes the same amount of or less conduct than that qualifying as a federal [controlled substance] offense, then the two offenses are a categorical match." *Id.* (internal quotation marks omitted). That result would end our analysis.

But if the offenses are not a categorical match, we proceed to a second step, asking whether the overbroad portion of the statute of conviction is "divisible," meaning that it "sets out one or more elements of the offense in the alternative." *Id.* at *4 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)). We will "consult 'authoritative sources of state law' to determine whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the

same crime." *Id.* (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016)). Elements are "those circumstances on which the jury must unanimously agree." *United States v. Vega-Ortiz*, 822 F.3d 1031, 1035 (9th Cir. 2016). If the statute is divisible, "then we may proceed to the third step in our analysis and apply the modified categorical approach." *Martinez-Lopez*, 2017 WL 3203552, at \*4. Under the modified categorical approach, "we examine judicially noticeable documents of conviction 'to determine which statutory phrase was the basis for the conviction.'" *Id.* (quoting *Descamps*, 133 S. Ct. at 2285).

In short, only when a state statute is both overbroad and divisible do we employ the modified categorical approach. We do so by examining certain conviction-related documents, including "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *United States v. Leal-Vega*, 680 F.3d 1160, 1168 (9th Cir. 2012) (internal quotation marks omitted).

We agree with Petitioner that California Penal Code section 182(a)(1) is overbroad, meaning that the categorical approach does not apply. But Petitioner also contends that the statute is indivisible, precluding the modified categorical approach, and therefore cannot qualify as a controlled substance offense. We disagree.

### 1. Categorical Approach

California Penal Code section 182(a)(1) punishes a broader range of conduct than either 8 U.S.C.

§ 1182(a)(2)(A)(i)(II) or § 1227(a)(2)(B)(i). A defendant could be convicted under section 182(a)(1) for *any* criminal conspiracy, whether or not it relates to a controlled substance. A conviction under section 182(a)(1), therefore, cannot count as a controlled substance offense under the categorical approach. *See, e.g.*, *United States v. Trent*, 767 F.3d 1046, 1052 (10th Cir. 2014) (holding that a conspiracy conviction under Okla. Stat. Ann. tit. 21, § 421(A)—a statute with text similar to the text of Cal. Penal Code § 182(a)(1)—is not a serious drug offense under the categorical approach because "the statute could be violated in many ways that have nothing to do with drugs"), *cert. denied*, 135 S. Ct. 1447 (2015), *abrogated on other grounds by Mathis*, 136 S. Ct. at 2251.

### 2.  Divisibility

Section 182(a) criminalizes the act of "two or more persons [who] conspire:  (1) To commit *any crime*." (Emphasis added.)  Here, we must consider whether the conspiracy statute is divisible as to the target crime.[2]  Faced with a statute that incorporates "any" California crime by reference, we must "consult 'authoritative sources of state law' to determine whether [the] statute contains alternative elements defining multiple crimes or alternative means by

---

[2] *United States v. Garcia-Santana*, 774 F.3d 528 (9th Cir. 2014), does not affect our analysis of whether the conspiracy statute, California Penal Code section 182(a)(1), is divisible. *Garcia-Santana* held that Nevada's conspiracy statute, Nev. Rev. Stat. § 199.480, is overbroad because it does not contain, as an element, an overt act. *Garcia-Santana*, 774 F.3d at 534. In a footnote, the opinion conveys that the omission of an overt act requirement cannot be cured by resort to the modified categorical approach to show that an overt act was proved in a given case. *Id.* at 534 n.3.  As we discuss below in text, an overt act *is* a requirement for a conspiracy conviction under California law.

which a defendant might commit the same crime." *Martinez-Lopez*, 2017 WL 3203552, at \*4 (quoting *Mathis*, 136 S. Ct. at 2256). The key question is whether a jury must find the purported element specifically. Here, the California Supreme Court has supplied the answer.

California law requires jurors to agree unanimously on the object crime of the conspiracy. "*Under Penal Code section 182 the jury must also determine which felony defendants conspired to commit*, and if that felony is divided into degrees, which degree of the felony they conspired to commit." *People v. Horn*, 524 P.2d 1300, 1304 (Cal. 1974) (emphasis added); *see also People v. Smith*, 337 P.3d 1159, 1168 (Cal. 2014) ("A conviction of conspiracy requires proof that the defendant and another person had *the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense*, together with proof of the commission of an overt act . . . in furtherance of the conspiracy." (emphasis added) (internal quotation marks omitted)).

Petitioner relies on a California Court of Appeal case, *People v. Vargas*, 110 Cal. Rptr. 2d 210 (Ct. App. 2001), to argue that section 182(a)(1) is indivisible. In *Vargas*, the court considered whether jurors must agree unanimously on all the object crimes of a multipurpose conspiracy, or if it is enough for the jurors to agree that crime, generally, was the object of the conspiracy. *Id.* at 244–47. The opinion has caused uncertainty as to the jury unanimity requirement for multipurpose conspiracy convictions in California. *See, e.g.*, *Trent*, 767 F.3d at 1061 (citing *Vargas* for the proposition that some jurisdictions "may" not require that "the jury agree unanimously on what crime the conspirators agreed to commit").

Whatever the California Court of Appeal intended to convey in *Vargas*, the California Supreme Court has never recognized a jury unanimity exception for multipurpose conspiracies. Our task, when answering a question of state law, is to follow the precedents of the state's highest court. *See United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 963 (9th Cir. 2008) ("In analyzing questions of state law, we are bound by the decisions of the state's highest court."); *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) ("[F]ederal courts are bound by the pronouncements of the state's highest court on applicable state law. . . . In assessing how a state's highest court would resolve a state law question—absent controlling state authority—federal courts look to existing state law without predicting potential changes in that law." (internal quotation marks omitted)). Because the California Supreme Court requires that jurors agree on a specified object crime in order to convict a person of conspiracy, California Penal Code section 182(a)(1) is divisible.

### 3. Modified Categorical Approach

Because California Penal Code section 182(a)(1) is both overbroad and divisible, we proceed to the modified categorical approach, in which we examine the specifics of Petitioner's conviction. The only document in the record relating to a controlled substance is the criminal complaint, which shows that the target offense of the conspiracy was a violation of California Health and Safety Code section 11352. That target offense adds an additional layer to our analysis, because California Health and Safety Code section 11352 is, with respect to the specific controlled substance, itself an overbroad but divisible statute to which the modified

categorical approach applies.  *Martinez-Lopez*, 2017 WL 3203552, at \*4–7.

The criminal complaint identifies transportation of heroin in describing one of the overt acts alleged as part of the charged conspiracy; no other drug is mentioned in the criminal complaint.  Heroin is a controlled substance under federal law.  *See* 21 U.S.C. § 802(6) (defining "controlled substance" by reference to statutory schedule); 21 U.S.C. § 812, Schedule I (b)(10) (listing heroin on Schedule I).  Even so, the record in this case is inconclusive.  The conspiracy count to which Petitioner pleaded guilty does not identify the particular controlled substance except in the list of overt acts. But there is no plea agreement, plea colloquy, judgment, or other document in the record that reveals the factual basis for Petitioner's guilty plea.  Because Petitioner's guilty plea *could* have rested on an overt act that did not relate to heroin, we cannot conclusively connect the transportation of heroin with her conviction.  *See Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1152 (9th Cir. 2003) (noting that "[c]harging papers alone are never sufficient" to establish the elements of conviction (internal quotation marks omitted)); *United States v. Velasco-Medina*, 305 F.3d 839, 852 (9th Cir. 2002) (noting that a charging document "contain[s] the elements of the crime the government *set[s] out to prove*; it [does] not establish the elements to which [the petitioner] admitted in his guilty plea").

On an inconclusive record, Petitioner is ineligible for relief because, with respect to eligibility for relief, she bears the burden of proof to show that her conviction did *not* relate to a federally controlled substance.  "If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the

burden of proving by a preponderance of the evidence that such grounds do *not* apply." 8 C.F.R. § 1240.8(d) (emphasis added). In *Young v. Holder*, 697 F.3d 976, 990 (9th Cir. 2012) (en banc), we held that a "petitioner cannot carry the burden of demonstrating eligibility for cancellation of removal by establishing an inconclusive record of conviction." Petitioner argues that we must overrule that aspect of *Young* because it is irreconcilable with a later United States Supreme Court case, *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1687 (2013). We turn to that pivotal issue.

B.  *Burden of Proof*

If *Young* remains good law, Petitioner is ineligible for cancellation of removal because the ambiguity in the record prevents her from proving that her conviction did *not* relate to a controlled substance as defined by federal law. A three-judge panel may "reject [a] prior opinion of this court" if an intervening and inconsistent Supreme Court decision has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller*, 335 F.3d at 900. Petitioner and Amici contend that this standard is met because, under *Moncrieffe*, the inquiry under the categorical approach is whether "a conviction of the state offense *necessarily* involved [the] facts equating to the generic federal offense." 133 S. Ct. at 1684 (emphasis added) (internal quotation marks and brackets omitted). That inquiry, they assert, is purely a question of law—not fact—as to which the burden of proof is irrelevant. We disagree both as to the relevance of *Moncrieffe* and as to the nature of the inquiry in the present context.

In *Young*, the petitioner was removable and was found ineligible for cancellation of removal on account of his conviction for "sale/transportation/offer[ing] to sell" cocaine base, an aggravated felony.  697 F.3d at 980–81.  The record of his conviction was inconclusive concerning the aggravated felony designation.[3]  Because, in the REAL ID Act, Congress "place[d] the burden of demonstrating eligibility for cancellation of removal squarely on the noncitizen," *id.* at 988, we held that the petitioner had the burden to establish that he had *not* committed an aggravated felony, *id.* at 989; *see also* 8 U.S.C. § 1229a(c)(4) ("An alien applying for relief or protection from removal has the burden of proof . . . .").  The petitioner failed to satisfy his burden and, therefore, was ineligible for relief from removal because the record was inconclusive on this point.  *Young*, 697 F.3d at 990.

In the later Supreme Court case, the petitioner had pleaded guilty to possession with intent to distribute marijuana in violation of a Georgia state law.  *Moncrieffe*, 133 S. Ct. at 1683.  The BIA found the petitioner *removable* for having committed a drug-trafficking crime that is punishable as a felony under the federal Controlled Substances Act, thus making it an aggravated felony.  *Id.*; *see also Moncrieffe v. Holder*, 662 F.3d 387, 389–90 (5th Cir. 2011) (explaining the issue in the case as being whether the petitioner was *removable* as charged for having committed this crime).  The Supreme Court asked and answered the question whether the petitioner's conviction could be considered *categorically* an aggravated felony when the

---

[3] The petitioner had pleaded guilty to a charging document that alleged 14 different theories of how he could have committed the offense, some of which were aggravated felonies and some of which were not. *Young*, 697 F.3d at 990.

Controlled Substances Act punishes the analogous offense as both a felony and a misdemeanor. 133 S. Ct. at 1684–85. The Court held that the petitioner was not removable because he had not been convicted of an aggravated felony; applying the categorical approach, the Controlled Substances Act did not "necessarily" punish as a felony all the conduct proscribed under the Georgia statute. *Id.* at 1686–87.

*Moncrieffe* differs from *Young* because, among other reasons, the two cases address entirely different legal issues. *Moncrieffe* addressed the question whether the petitioner was *removable*, a question as to which the *government* bears the burden of proof. *Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1024 (9th Cir. 2008). By contrast, the relevant portion of *Young* addressed only the question whether the petitioner was eligible for *cancellation* of removal. As to that question, the *noncitizen*, not the government, bears the burden of proof. 8 U.S.C. § 1229a(c)(4); 8 C.F.R. § 1240.8(d). Thus it is Congress, not the Supreme Court, that assigned the burden of proof to a noncitizen who seeks relief in the form of cancellation of removal. *See* 8 U.S.C. § 1229a(c)(4) ("An alien applying for relief or protection from removal has the burden of proof to establish that the alien" is eligible.). The *Moncrieffe* opinion does not cite that statute anywhere, and for good reason. As noted, the issue before the Court concerned removability, not relief from removal.

It is well established that the party who bears the burden of proof loses if the record is inconclusive on the crucial point. *See, e.g.*, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005) (holding that, under the Individuals with Disabilities Education Act, whichever party seeks relief must carry the burden of persuasion, whether it be the parents or the school district); *Dir., Office of Workers' Comp. Programs*

*v. Greenwich Collieries*, 512 U.S. 267, 272–81 (1994) (holding that, under the Administrative Procedure Act, the burden of proof encompasses the burden of persuasion; when the evidence is evenly balanced, the party with the burden must lose). *Moncrieffe* did not cite, let alone overrule, those and similar cases recognizing the effect of the burden of proof when the relevant evidence is in equipoise. That is because, as discussed below, *Moncrieffe* is not about the burden of proof.

Under Supreme Court law, when evidence is in equipoise, the burden of persuasion determines the outcome. Nor is it problematic that the same inconclusive evidence can result in a favorable decision on removability (*Moncrieffe*) yet an unfavorable decision on cancellation (*Young*). *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164–65 (11th Cir. 2008) (noting that two factual findings were not inconsistent given that "it is logically possible for the losing side to have varied with, because it depended on, the burden of proof"); *cf. United States v. Meza-Soria*, 935 F.2d 166, 169 (9th Cir. 1991) (noting that "courts have made it quite clear that because different standards of proof are involved, acquittal in a criminal action does not bar a civil suit based on the same facts" (internal quotation marks and brackets omitted)). In *Young*, we joined the Fourth and Tenth Circuits in recognizing that, when the burden of persuasion rests on the noncitizen to show eligibility for cancellation of removal, an inconclusive record fails to satisfy that burden. 697 F.3d at 989 (citing *Salem v. Holder*, 647 F.3d 111, 115–16 (4th Cir. 2011); *Garcia v. Holder*, 584 F.3d 1288, 1289–90 (10th Cir. 2009)); *see also Syblis v. Att'y Gen. of U.S.*, 763 F.3d 348, 356–57 (3d Cir. 2014) (reaching the same conclusion, post-*Moncrieffe*); *Sanchez v. Holder*, 757 F.3d 712, 720 n.6 (7th Cir. 2014) (same). *But see Sauceda v.*

*Lynch*, 819 F.3d 526, 531, 532 & n.10 (1st Cir. 2016) (rejecting *Young* and holding that *Moncrieffe* creates a presumption that a defendant committed the "least of the acts" that goes unrebutted when *Shepard* documents "shed no light on the nature of the offense or conviction," even in the cancellation-of-removal context).[4]

To be sure, *Moncrieffe* acknowledged that its analysis for determining whether a particular crime of conviction is *categorically* a crime involving moral turpitude "is the same in both" the removal and cancellation contexts. 133 S. Ct. at 1685 n.4 (citing *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), which considered whether the petitioner was eligible for cancellation of removal after having committed two simple possession offenses under Texas state law). And that is true, so far as the discussion in *Moncrieffe* goes: "[c]onviction is the relevant statutory hook" whether determining removability or eligibility for relief from removal. *Id.* at 1685 (internal quotation marks omitted). But *Moncrieffe* did not discuss the differences in the burden of proof in those two contexts; it had no reason to. To the contrary, the Court limited its rejection of the government's suggestion that a noncitizen should have an opportunity to disprove the misdemeanor version of the Georgia statute to the *categorical* context: "This solution is entirely

---

[4] In *Le v. Lynch*, 819 F.3d 98, 108 (5th Cir. 2016), the court held that, "[n]otwithstanding the inconclusive evidence in the instant case, . . . the burden remains on [the petitioner] to prove eligibility for relief from removal." But there, the ambiguity did not rest on a divisible statute, and the court declined to decide "whether *Moncrieffe* affected how courts should apply the modified categorical approach to determine whether a prior conviction disqualifies a noncitizen from relief from removal when the record of conviction is ambiguous as to whether the elements of the crime correspond to a disqualifying offense." *Id.* at 107 n.5.

inconsistent with both the INA's text [8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229b(a)(3)] and *the categorical approach*." *Moncrieffe*, 133 S. Ct. at 1690 (emphasis added). *Moncrieffe* therefore cannot be read to inform the relevant dispute in *Young*, which pertained only to the operation of the burden of proof when the *modified* categorical approach applies.[5]

For all these reasons, *Moncrieffe* and *Young* are not clearly irreconcilable.

We are equally unpersuaded by Petitioner and Amici's argument that the modified categorical approach involves only a legal inquiry and that the burden of proof is irrelevant after *Moncrieffe* and *Descamps*. As noted, *Moncrieffe* did not decide or even suggest anything about the burden of proof. *Descamps*, for its part, did not intimate that *every* inquiry under the modified categorical approach is a question of law; it simply held that the modified categorical approach was "a tool for implementing the categorical approach" and, therefore, could not be applied to indivisible statutes. 133 S. Ct. at 2284, 2286–87.

---

[5] Amici also contend that *Young* is clearly irreconcilable with *Moncrieffe* because of the latter's statement that "[t]he categorical approach was designed to avoid" inconsistent treatment of "two noncitizens . . . 'convicted of' the same offense." *Moncrieffe*, 133 S. Ct. at 1690. The Court made that comment in the context of applying the categorical approach, not the modified categorical approach. And Amici's proposed solution—overruling *Young* and allowing relief when the record of conviction is ambiguous—would not eliminate the prospect of inconsistent results: The opportunity for individuals, convicted of a given offense, to obtain relief would still vary depending on the record's clarity, as only the default rule would change. Such a rule therefore would not ameliorate Amici's concern about inconsistent treatment of similarly situated persons.

Although the modified categorical approach, like the categorical approach, involves some strictly legal issues—such as a statute's divisibility—the inquiry into which part of a divisible statute underlies the petitioner's crime of conviction is, if not factual, at least a mixed question of law and fact.[6]  "[M]ixed questions of law and fact" are those in which "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982).  The modified categorical approach squarely fits within that definition. *See Descamps*, 133 S. Ct. at 2284–85 (explaining that, under the modified categorical approach, courts may review approved "extra-statutory materials . . . [to] discover which statutory phrase contained within a statute listing several different crimes[] covered a prior conviction." (internal quotation marks omitted)); *Taylor*, 495 U.S. at 600 (holding that, under the categorical approach, courts "look only to *the fact* that the defendant had been convicted of" certain crimes (emphasis added)); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than *the fact* of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)).

---

[6] At least one other circuit has held that the determination of the offense of conviction is a purely factual inquiry.  *See Le*, 819 F.3d at 105 ("[T]he alien has the burden of proof to establish that he satisfies the applicable eligibility requirements in order to prove that any grounds for denial do not apply.  When an alien's prior conviction is at issue, the offense of conviction itself *is a factual determination, not a legal one*.  However, determining whether that conviction is a particular type of generic offense is a legal question." (emphasis added) (citations omitted)).

When reviewing mixed questions of law and fact, we regularly consider the burden of persuasion. *See, e.g.*, *Dorrance v. United States*, 809 F.3d 479, 484 (9th Cir. 2015) (stating that the question whether taxpayers had a cost basis in assets that they later sold, but for which they paid nothing, "is a mixed question of law and fact" as to which the taxpayers bear the burden of persuasion); *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013) (noting that "[t]he issue of whether a person has actual or apparent authority to consent to a search is a mixed question of law and fact" and that "the government has the burden of establishing the effectiveness of a third party's consent to a search"); *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995) (stating that we review de novo the district court's rulings on the scope of the attorney-client privilege because they involve "mixed questions of law and fact" and that the burden of persuasion is on the party seeking to establish that the privilege applies); *United States v. Lingenfelter*, 997 F.2d 632, 636, 637 (9th Cir. 1993) (stating that whether police conduct amounts to a "search" within the meaning of the Fourth Amendment is "a mixed question of law and fact" and that the defendant bears the burden of demonstrating that he or she had a legitimate expectation of privacy in the place searched).

To summarize, *Moncrieffe* is about *removal*; by contrast, *Young* is about *cancellation* of removal. *Moncrieffe* discusses how the *categorical* approach works when defining a crime involving moral turpitude and says nothing at all about operation of the burden of proof, which was not an issue in that case. *Young* discusses the burden of proof when applying the *modified* categorical approach. Although *Descamps* makes clear that the modified categorical approach is "a tool for implementing the categorical approach," 133 S.

Ct. at 2284, it is a tool that requires the consideration of factual documents within the context of the law and, by that process, makes the burden of proof relevant. Thus, neither *Moncrieffe* nor *Descamps* requires us to overrule *Young*. The decisions are not clearly irreconcilable.

C. *Expungement*

Finally, Petitioner argues that the expungement of her conspiracy conviction removes it from the definition of "conviction" under 8 U.S.C. § 1101(a)(48)(A).[7] Specifically, she challenges our deference to the BIA's interpretation of § 1101(a)(48)(A). *See Murillo-Espinoza v. INS*, 261 F.3d 771, 774 (9th Cir. 2001) (adopting the BIA's interpretation of § 1101(a)(48)(A) in *In re Roldan*, 22 I. & N. Dec. 512 (B.I.A. 1999) (en banc), as "preclud[ing] the recognition of subsequent state rehabilitative expungements of convictions").

Petitioner did not present that claim to the BIA, and it is not exhausted. We lack jurisdiction over an unexhausted claim. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (holding that 8 U.S.C. § 1252(d)(1) "mandates

---

[7] Section 1101(a)(48)(A) provides:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

exhaustion and therefore generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below"). Accordingly, we must dismiss the expungement claim.**[8]**

**Petition DENIED IN PART and DISMISSED IN PART.**

---

TASHIMA, Circuit Judge, dissenting:

The majority holds that *Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc), remains good law because it is not clearly irreconcilable with *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). Maj. Op. at 19. Under *Young*, Marinelarena must prove that she was *not* convicted of a controlled substance offense in order to establish her eligibility for cancellation of removal. Because the record is ambiguous on this point, the majority reasons, Marinelarena cannot satisfy her burden of proof and is thus ineligible for relief. *Id.* at 13. I disagree with the majority's conclusion that *Moncrieffe* does not abrogate *Young*. Under *Moncrieffe*, the ambiguity in the record as to Marinelarena's offense of conviction means that

---

**[8]** Even if we agreed with Petitioner that this claim qualifies for an exception to the exhaustion requirement, we have rejected a similar argument on the merits. *See Reyes v. Lynch*, 834 F.3d 1104, 1108 (9th Cir. 2016) (holding that, even though a California court set aside a petitioner's earlier *nolo contendere* plea, a "state conviction expunged under state law is still a conviction for purposes of eligibility for cancellation of removal and adjustment of status," even when the petitioner was never incarcerated, because "the alien was punished or his liberty was restrained by the terms of his probation").

she has *not* committed an offense disqualifying her from
relief. I respectfully dissent.

In *Moncrieffe*, the Supreme Court explained the
framework for applying the categorical approach to determine
whether a noncitizen has committed an aggravated felony, as
defined by the Immigration and Nationality Act. 133 S. Ct.
at 1684–85. In cases applying the categorical approach,
courts compare the elements of a noncitizen's offense of
conviction to those of a generic federal offense that would
disqualify her from relief. *Descamps v. United States*, 133 S.
Ct. 2276, 2283 (2013). The Court in *Moncrieffe* specified
that, under the categorical approach, courts should "look 'not
to the facts of the particular prior case,' but instead to
whether 'the state statute defining the crime of conviction'
categorically fits within the 'generic' federal definition of a
corresponding aggravated felony." *Moncrieffe*, 133 S. Ct. at
1684 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183,
186 (2007)). "[A] state offense is a categorical match with a
general federal offense only if a conviction of the state
offense '*necessarily involved* . . . facts equating to [the]
general [federal offense].'" *Id.* (emphasis added) (quoting
*Shepard v. United States*, 544 U.S. 13, 24 (2005) (plurality
opinion)). "Whether the noncitizen's actual conduct involved
such facts is 'quite irrelevant.'" *Id.* (quoting *United States ex
rel. Guarino v. Uhl*, 107 F.2d 399, 400 (2d Cir. 1939)).

The Court further stated that, if a statute contains
multiple, alternative versions of a crime (that is, if the
modified categorical approach applies), "a court may
determine which *particular* offense the noncitizen was
convicted of by examining the charging document and jury
instructions, or in the case of a guilty plea, the plea
agreement, plea colloquy, or 'some comparable judicial

record of the factual basis for the plea.'" *Id.* (emphasis added) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009)). The Court labeled this inquiry *as a whole* "the categorical approach," as opposed to distinguishing between the categorical and modified categorical approaches. *Id.* at 1685.

In *Moncrieffe*, the government argued that the petitioner had committed a "felony punishable under the Controlled Substances Act" ("CSA"), which qualifies as an aggravated felony that would allow the petitioner to be deported. *Moncrieffe*, 133 S. Ct. at 1683. The Court disagreed. *Id.* at 1684. The record established that Moncrieffe had been convicted under a state statute proscribing conduct that constitutes an offense under the CSA, but the record was ambiguous as to whether the CSA would "'necessarily' prescribe *felony* punishment for that conduct." *Id.* at 1685 (emphasis added). The Supreme Court held that "[a]mbiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA." *Id.* at 1687. "Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony" allowing him to be deported. *Id.*

This analysis is clearly irreconcilable with *Young*. *Young* holds that ambiguity in the record as to whether the noncitizen committed an aggravated felony means that she was convicted of the offense for purposes of the immigration statutes. *Young*, 697 F.3d at 988–99. *Moncrieffe* holds the opposite: If the record does *not* conclusively establish that the noncitizen committed the offense, then she was *not* convicted of the offense for purposes of the immigration statutes. *Moncrieffe*, 133 S. Ct. at 1687.

The majority's arguments to the contrary are unpersuasive. The majority first contends that *Moncrieffe* does not control because it "addressed the question whether the petitioner was *removable*, a question as to which the *government* bears the burden of proof," while this case concerns cancellation of removal, for which an applicant bears the burden of proving eligibility. Maj. Op. at 16. But *Moncrieffe* itself explicitly forecloses this distinction, explaining that the categorical "*analysis is the same* in both [the removal and cancellation of removal] contexts." *Moncrieffe*, 133 S. Ct. at 1685 n.4 (emphasis added). Under *Moncrieffe*, the framework for applying the categorical and modified categorical approaches does *not* depend on which party bears the burden of proof in a particular kind of immigration proceeding.

The majority sidesteps this explicit instruction by arguing that *Moncrieffe* "limited" its holding "to the *categorical* context." Maj. Op. at 18–19. Per the majority, "*Moncrieffe* therefore cannot be read to inform the relevant dispute in *Young*, which pertained only to the operation of the burden of proof when the *modified* categorical approach applies." Maj. Op. at 19 (footnote omitted). This purported distinction overstates the difference between the categorical and modified categorical approaches. As the Supreme Court has noted, the modified categorical approach is "*a tool for implementing the categorical approach*" that allows a court "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013).

Thus, in *Moncrieffe*, the Court outlined *both* what we have called the "categorical" step of the analysis *and* the

"modified categorical" step of the analysis, and then labeled the inquiry *as a whole* "the categorical approach." *Moncrieffe*, 133 S. Ct. at 1684–85 (outlining the categorical and modified categorical analysis and stating that "[t]his categorical approach has a long pedigree in our Nation's immigration law"). That is because the relevant inquiry in both categorical and modified categorical cases is the same: A court must compare the elements of the offense of which the noncitizen was convicted to the elements of a generic federal offense disqualifying her from relief, and then determine what facts are *necessarily* established by that conviction. The only difference between the two approaches is that, in modified categorical cases, a statute lists "multiple, alternative versions of [a] crime," *Descamps*, 133 S. Ct. at 2284, so the court must look to the record of conviction to determine "which particular offense the noncitizen was convicted of." *Moncrieffe*, 133 S. Ct. at 1684. Once that determination is made, the relevant question is the same as that in categorical cases: A court must ask what the noncitizen's conviction *necessarily* involved, "not what acts [the noncitizen] committed." *Id.* at 1685.

In *Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court reaffirmed that the categorical and modified categorical approaches involve the same analysis. The Court stated that, "when a statute sets out a single (or 'indivisible') set of elements to define a single crime," a court should "line[] up that crime's elements alongside those of the generic offense and see[] if they match." *Id.* at 2248. "Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." *Id.* at 2249. Cases involving such statutes apply the modified categorical approach. Under this approach, "a sentencing court looks to a limited class of documents (for

example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* "The court can then compare that crime, *as the categorical approach commands*, with the relevant generic offense." *Id.* (emphasis added).[1]

In other words, whether a case applies what we have called the "categorical" or the "modified categorical" approach, the analysis is the same: The court asks whether the noncitizen was *necessarily* convicted of an offense disqualifying her from relief. If the record of conviction is ambiguous on this point – as it is in this case – then her "conviction did not '*necessarily*' involve facts that correspond to" a disqualifying offense. *Moncrieffe*, 133 S. Ct. at 1687 (emphasis added). Thus, under the modified categorical approach, Marinelarena was not convicted of a controlled substance offense under federal law.[2]

---

[1] The majority contends that "the inquiry into which part of a divisible statute underlies the petitioner's crime of conviction is, if not factual, at least a mixed question of law and fact" because the inquiry requires the court to examine certain documents in the record of conviction. Maj. Op. at 20. This argument misses the mark. The relevant point is that, under the modified categorical approach, the court looks at those documents only to determine which crime the petitioner was convicted of, and whether that crime's elements match those of a disqualifying generic offense. This is a purely legal inquiry. *See Descamps*, 133 S. Ct. at 2293 ("The modified approach does not authorize a sentencing court to substitute . . . a facts-based inquiry for an elements-based one.").

[2] Although this is an open question in our circuit, another panel recently has characterized *Moncrieffe*, 133 S. Ct. at 1678, as "suggest[ing] an inconclusive record works to a petitioner's advantage, regardless of which party bears the burden of proof." *Lozano-Arredondo v. Sessions*, 2017 WL 3393454, at *4 (9th Cir. Aug. 8, 2017) (citing *Almanza-Arenas v. Lynch*, 815 F.3d 469, 488–89 (9th Cir. 2016) (en banc) (Watford, J., concurring in the judgment). In *Almanza-Arenas*, Judge Watford noted

I would grant the petition and respectfully dissent.

---

that "our decision in *Young* [is] fundamentally incompatible with the categorical approach, especially after *Descamps* and *Moncrieffe* clarified the elements-focused nature of the inquiry." *Almanza-Arenas*, 815 F.3d at 489.